**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TODD DEVLON HILL,**

**Petitioner,**

**v.**                                             **Civil Action No. 1:09cv92**
                                                    **Criminal Action No. 1:06cr82**
                                                    **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

**Respondent.**

**REPORT AND RECOMMENDATION**

**I.  Introduction**

On July 2, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody. (Dkt.# 209).  Petitioner did not file a

memorandum in support. The Government filed its response on August 21, 2009. (Dkt.# 222).  On

August 31, 2009, petitioner filed a motion for leave to amend his § 2255 and to request expedited

disposition. (Dkt.# 223).  That motion was granted by order entered September 1, 2009. (Dkt.# 224).

On September 24, 2009, petitioner filed his amended motion, titled as Petitioner's Memorandum in

Support of Motion to Vacate, Set Aside or Correct Sentence. (Dkt.# 226).  On November 5, 2009,

the Government filed a motion for leave to file its response to petitioner's amended 2255 motion out

of time (Dkt.# 239)[1] along with its response to petitioner's memorandum/amended motion.  (Dkt.#

240).  On November 18, 2009, petitioner filed a motion for an extension of time in which to reply

(Dkt.# 243), which was granted by Order entered November 30, 2009.  (Dkt.# 247). Petitioner's

reply was filed on November 30, 2009.  (Dkt.# 248).

_____

[1] The motion was granted by Order entered November 9, 2009.  (Dkt.# 241).

## II. Facts

### A. Conviction and Sentence

On March 5, 2007, petitioner signed a plea agreement, agreeing to plead guilty to Count Two of a nine-count indictment, possession with intent to distribute approximately 31.54 grams of cocaine base, also known as "crack," in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The maximum penalty for the offense being pled to was specified as imprisonment for a period of at least five (5) years and not more than forty (40) years, a fine of not more than $2,000,000.00, and a period of supervised release of at least four (4) years. (Dkt.# 52 at 2). The parties stipulated and agreed that petitioner's total drug relevant conduct was at least 500 grams but less than 1.5 kilograms of cocaine base. (Id. at 3). In the plea agreement, the petitioner conditionally waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 12. The above paragraph notwithstanding, the defendant will retain his appellate rights and rights to collaterally attack his sentence only using a base offense level of 37 or higher. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the aforementioned adjusted Guideline offense levels. The United States will retain the right to appeal any sentence imposed.

(Id. at 4).

On March 5, 2007, the petitioner, then aged 21, with a tenth grade education and no GED, entered his plea in open court. (Dkt.# 177 at 16 - 17). Petitioner testified that he could read, write and understand English and denied any recent treatment for mental illness or for addiction to any type of narcotic drugs. (Id. at 17). Further, he testified that he had not taken any medication, drug or alcohol within the previous 24 hours. (Id. at 17 - 18). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the

paragraph 12 *supra*. (Id. at 8 - 14).  The Court specifically asked petitioner if he and his attorney had discussed the waiver of his appellate and post-conviction relief rights and petitioner replied "[y]es, sir." (Id. at 36).  The Court asked petitioner if he understood that if the District Judge used a guideline level 36 or lower in sentencing him, that he would be giving up the right to appeal or collaterally challenge the sentence he received, and petitioner replied "[y]es, sir." (Id.).  The Court asked petitioner if he and his attorney had gone over the plea agreement together before signing it, and petitioner said that they had.  (Id. at 25 - 26).  The Court informed petitioner that the maximum sentence for the crime which he was pleading could be imprisonment for a period of not less than five (5) years but not more than forty (40) years, a fine of up to $4,000,000.00 and a term of at least four years of supervised release (Id. at 32 - 33), but that the ultimate sentence he received could be greater than that estimated by his counsel; petitioner indicated that he understood.  (Id. at 33).  The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone at that time, and it would not be possible to know until the sentencing hearing and petitioner said "[y]es, sir." (Id. at 45).  The Court summarized the rights that petitioner was giving up by pleading guilty.  (Id. at 31 - 32 and 36 - 39).

To establish a factual basis for the plea, the Government presented the testimony of Sergeant Brian Purkey of the Bridgeport City Police Department, the Commander of the Harrison-Lewis Drug & Violent Crimes Task Force.  (Id. at 40 - 44 and 47 - 48).  Although petitioner initially questioned the total amount of crack cocaine attributed to him, the Court found that the drug information provided by Sergeant Purkey was reliable in proving the total amount of drug relevant conduct; petitioner did not object. (Id. at 44 - 45 and 50).  After the factual basis for the plea was presented, the petitioner entered his plea.  (Id. at 46).  The Court asked petitioner if he believed that he was,

in fact, guilty of Count One of the indictment and petitioner advised the Court that he was. (<u>Id</u>. at 46 - 47). The Court then asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (<u>Id</u>. at 20). The Court further asked petitioner whether he thought that there was any thing he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner denied that there was. (<u>Id</u>. at 21). At the conclusion of the hearing, the Court determined that petitioner was competent, that he had made his plea freely and voluntarily, with full understanding of its consequences, and that the elements of the crime in Count One had been established beyond a reasonable doubt. (<u>Id</u>. at 49). Petitioner did not object to the Court's finding.

On December 3, 2007, petitioner appeared before the court for sentencing. Defense counsel's first objection to the PreSentence Investigation Report ("PSR") was mooted. His second objection, to the probation officer's finding that there were no mitigating factors to warrant a downward departure and that the guideline sentence was reasonable, was overruled. (Dkt.# 179 at 30). Petitioner was found to have a base offense level of 34. (<u>Id</u>. at 31). After a two-level reduction for acceptance of responsibility, plus a third level granted by motion of the Government, petitioner's total offense level was 31. (<u>Id</u>. at 31 - 32). With a criminal history category of II, the Court found that the Guidelines called for a sentencing range of one hundred and twenty-one to one hundred and fifty-one months of imprisonment. (<u>Id</u>. at 32). Petitioner availed himself of the opportunity to allocute, apologizing to the Court, his family, and Sergeant Purkey, and promising to change his ways. (<u>Id</u>. at 33 - 34). Defense counsel made a motion for a variant sentence, asking the Court for leniency based on petitioner's youth, troubled childhood spent in foster homes and his lack of guidance. The Government opposed the motion but recommended a sentence at the lowest end of

the guideline.  (Id. at 39 - 42).

Taking all necessary information into consideration, the Court did not grant petitioner's motion for a variant sentence, but instead sentenced petitioner to the lowest end of the guidelines, a term of 121 months imprisonment, with credit for the time served since January 10, 2007, to be followed by a four year term of supervised release.  (Id. at 46 - 47).  The Court recommended that while incarcerated, petitioner participate in the Bureau of Prison's long-term residential drug abuse program.  (Id. at 47).  The Court reiterated with petitioner the waiver of appellate and habeas corpus rights in his plea agreement, noting that he would have retained his appellate and habeas corpus rights only if he had a base offense level of 37 or higher, but that since his base offense level was 34, those rights were waived.  (Id. at 49 - 50). When questioned as to his understanding of this, defendant denied  having any questions and indicated his understanding.  (Id. at 50).

## B.    Direct Appeal

Despite his waiver of appeal rights, the petitioner filed a Notice of Appeal on December 17, 2007. (Dkt.# 164). An Anders[2] brief was filed on petitioner's behalf.  (4th Cir. Dkt.# 11) (08-4059). Petitioner advised the Fourth Circuit Court of Appeals of his intention to file a *pro se* supplemental Anders brief, but in fact, never did so. (4th Cir. Dkt.# 17) (08-4059).  The Government moved to dismiss the appeal because the petitioner had waived his right to appeal. (4th Cir. Dkt.# 18) (08-4059). On July 9, 2008, the Fourth Circuit Court of Appeals granted the Government's motion to dismiss and dismissed petitioner's appeal.  (4th Cir. Dkt.# 22 and 23) (08-4059).

---

[2] Anders v. California, 386 U.S. 738,  87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967): (holding that after conviction, if after conscientious examination, appellate counsel concludes that there is no merit to an appeal, and that any possible points of error are merely frivolous, then counsel must advise the Court of that fact, request permission to withdraw, and submit  a brief with the appellate court detailing the reasoning for that belief and referring to anything in the record which might arguably support the appeal. The indigent defendant may then file a pro se brief, raising any points that he chooses).

### C.    Federal Habeas Corpus

#### Petitioner's Contentions (Dkt.# 209)

Petitioner raises three grounds of ineffective assistance of counsel, for:

1) frustrating petitioner's efforts toward a plausible pre-trial defense strategy

2) inadequately advising petitioner concerning the plea offer; and

3) failing to introduce a  plausible defense at the sentencing hearing, including failing to object to petitioner's total drug relevant conduct.

#### Government's Response (Dkt.# 222)

The Government contends that counsel was not ineffective and that petitioner's claims are unsupported by the record and lack merit.  Further, the Government argues, petitioner validly waived the right to file a habeas corpus action incident to his plea agreement, and any of his claims falling outside of that waiver have no merit and/or are unsupported by the record.

#### Petitioner's Amended § 2255 Motion/Memorandum in Support (Dkt.# 226)

Petitioner elaborated on his previously-raised ineffective assistance claims by alleging that:

**a) Supplementing Original Issue (2)**: counsel was ineffective for advising him that providing substantial assistance to earn a "5K letter"[3] from the prosecutor was not an option; and

**b) Supplementing Original Issue (2)**: counsel misled him to believe that a viable defense strategy would be to have the Government initiate pre-plea cooperation discussions; and

**c) Supplementing Original Issue (2)**: counsel never advised him that in addition to going

---

[3] After a defendant in a criminal federal case cooperates with the government to the government's satisfaction, whether in the investigation involving the defendant or in the investigation of any other person, the federal prosecutor will send a letter to the sentencing judge affirming that the defendant has substantially assisted the government pursuant to Section 5K1.1 of the US Sentencing Guidelines. This document is referred to as a 5K letter. The sentencing judge will consider the letter and may reduce the defendant's sentence, depending on the nature and the value of the defendants cooperation.

to trial or entering a plea pursuant to a plea agreement, he had a third option, that of entering an "open plea."

Petitioner requests that his conviction be overturned, and that he be permitted to enter an open plea and/or receive a cooperation agreement with the Government.

**Government's Response to Petitioner's Amended Motion Pursuant to § 2255 (Dkt.# 240)**

1) The Government moves the Court to dismiss petitioner's § 2255 motion, because although some ineffective assistance of counsel claims might be excepted from the waiver, petitioner waived his appellate and habeas corpus rights incident to his plea agreement.

2) The Government contends that petitioner's amended motion reveals no additional facts nor does it raise any important issues that are in dispute.

**Petitioner's Reply (Dkt.# 248)**

Petitioner reiterates his previously-made claims, refuting the Government's position that the waiver of habeas corpus rights should apply. He contends that because he raised an issue dealing directly with plea negotiations during the pretrial stage,(i.e., counsel's failure to obtain a pre-plea cooperation agreement for him), it should fall outside of the waiver. Further, he claims prejudice, in that had counsel not been ineffective in negotiating the plea with the AUSA, he would have received a lesser sentence.

**D.     Recommendation**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction. Further, petitioner's claim of ineffective assistance of counsel at sentencing, although falling outside of the waiver, lacks merit

and has no support in either fact or law.

## III.  Analysis

### A.  Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence."  Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### B.  Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."  The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and

8

conduct of the accused."  Id.  After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds.  Id. at 732.  For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."  Id.  Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel."  Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights.  Lemaster, 403 F.3d at 220.  Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary.  Id.  And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights."  Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea.  Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver.  Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for

a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver.  In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal.  Although  this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings.  Id.  If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground  that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement.  Attar, 38 F.3d at 732-33.  Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal

10

rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In <u>Braxton v. United States</u>, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. <u>Braxton</u> at 502 (citing <u>United States v. Cannady</u>, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); <u>Butler v. United States</u>, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in <u>Attar</u> applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' <u>United States v. White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in <u>Attar</u> and that the Fourth Circuit's holding in <u>United States v.</u>

Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction.  Braxton, 358

F. Supp. 2d at 503, n. 2.  Finally, the Braxton Court found it persuasive that the majority of circuits

to have confronted this question "have held that collateral attacks claiming ineffective assistance of

counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not

relate directly to the plea agreement or the waiver, are waivable."  Id. at 503. (collecting cases).

The  unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007

U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11

colloquy and the defendant specifically mentions he waives the right to appeal any sentence below

the statutory maximum, the record established that defendant made a knowing and voluntary waiver

of rights.  Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether

petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights

contained  in the plea agreement, and petitioner said that he did.  (Dkt.# 177 at 36).  Further,

petitioner specifically testified that he understood that, incident to paragraph 12 of his plea

agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if the District

Judge used a level 36 or lower under the guidelines in sentencing him.  (Id.).  His base offense

guideline level was 34 and his total offense level was 31.  (Dkt.# 179 at 31 - 32).  The undersigned

finds that the only reasonable conclusion from this inquiry is that  petitioner knowingly and

voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion, thus

precluding a review of the merits of his first and second claims of ineffective assistance of counsel.

However,  a waiver analysis may not be dispositive of all of the issues in this petition.

Because petitioner has also alleged that counsel was ineffective after the entry of the guilty plea, for

failing to  introduce a  plausible defense at the sentencing hearing, including failing to object to

petitioner's total drug relevant conduct, that claim will be given review.

## C.    Ineffective Assistance of Counsel

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness."  <u>Strickland</u> at 688.  The second prong requires the petitioner to show that the deficient performance prejudiced the defense.  <u>Id.</u> at 687.  In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985).  In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.  <u>Strickland</u> 466 U.S. at 689-90.  Moreover, there are no absolute rules in determining what is reasonable performance.  <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a

particular case and at the time of counsel's conduct).

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any claim of ineffective assistance of counsel occurring prior to the entry of his guilty plea. Therefore, petitioner's Ground One claim that counsel was ineffective for frustrating his efforts toward a plausible pre-trial defense strategy and his Ground Two claim that counsel inadequately advised him concerning the plea offer are waived.

**Ground Two: Whether Counsel's Performance was Ineffective at Sentencing for Failing to Introduce a Plausible Defense, Including Disputing the Amount of Alleged Drug Amounts.**

Petitioner contends that at the sentencing hearing, counsel was ineffective because he failed to introduce a plausible defense. The only specific example of this that he alleges is that prior to the sentencing hearing, up until when the PSR was received, counsel advised him that he could challenge his total drug relevant conduct. He contends that until counsel received the PSR, counsel agreed with his idea for a good sentencing hearing strategy: that counsel would present him as a witness at the sentencing hearing, to dispute the alleged drug amounts as exceeding the amount that he was charged with possessing with the intent to distribute. He claims that after receiving the PSR, counsel "discontinued any conversations related to his anticipated testimony at the sentencing hearing" and that thereafter, he was sentenced to 121 months imprisonment. (Dkt.# 226 at 5).

Petitioner's claim has no support in the record. Paragraph 9 of petitioner's plea agreement contains this language:

> 9. Pursuant to Sections 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that, on or about January 21, 2006, at or near Clarksburg, Harrison County, West Virginia, the defendant, unlawfully, knowingly and intentionally possessed with the intent to distribute approximately 31.54 grams of cocaine base, also known as "crack." The parties further stipulate and agree that the defendant's total relevant conduct in this case is, at least 500 grams but less than 1.5 kilograms of cocaine base. The Court is not bound by the above stipulation and is not

14

required to accept the same. Mr. Hill understands and agrees that should the Court not accept the above stipulation, Mr. Hill will not have the right to withdraw his plea.

(Dkt.# 52 at 3).

At his plea hearing, after the entire plea agreement, including paragraph 9, *supra,* was read aloud or summarized into the record by the Assistant U.S. Attorney, this exchange was had:

THE COURT: Thank you. **Mr. Hill, were you able to hear and follow along with Ms. Morgan as she summarized the agreement?**

MR. HILL: **Yes.**

THE COURT: **Did you agree with the summarization?**

MR. HILL: **Yes, I did.**

THE COURT: **And did you understand it, sir?**

MR. HILL: **Yes, sir.**

THE COURT: **Did it seem to cover all of the things that you have agreed to with the Government in order for you to plead guilty to Count Two?**

MR. HILL: **Yes.**

THE COURT: **Is there anything that you agreed to with them that she didn't summarize - - did not summarize? Is there any part of your deal that she did not summarize?**

MR. HILL: **No.**

(Dkt.# 177 at 14). *(emphasis added).*

Thereafter, the Court went over the plea agreement with petitioner:

THE COURT: Now I want to turn to paragraph 9 of that agreement, that's your nonbinding stipulation. **You and the United States Attorney's Office, Ms. Morgan's office, have agreed that certain facts exist and that the Court doesn't need to hear any evidence to prove those facts**. Do you see that in paragraph 9?

MR. HILL: **Yes, sir, I do.**

THE COURT: **And what you have agreed the facts are, is the facts of Count**

**Two, that on or about January 21ˢᵗ, at or near Clarksburg, in Harrison County, West Virginia, you unlawfully, knowingly and intentionally possessed with intent to distribute approximately 31.54 grams of cocaine base, also known as "crack." It goes on, it says you further stipulate and agree that your total relevant drug conduct. [sic] You understand sir, that total relevant conduct drives sentencing in the federal system, particularly, under the guidelines.**

MR. HILL.  No, sir.

THE COURT: **Your total - - you are agreeing, your total relevant conduct is at least, in other words, not less than 500 grams, but it is less than 1.5 kilograms or kilos.  Do you understand that?**

MR. HILL: **Yes, sir**.

THE COURT: **And that's of "crack" cocaine**, [sic]

MR. HILL: **Yes, sir, I understand**.

THE COURT: Now, the Court isn't bound by this stipulation.  In other words, the Court could receive evidence through the presentence investigation report, other witnesses, that could cause her to find at the sentencing hearing that your relevant conduct was different than that which is stated in the stipulation in paragraph 9.  Do you understand that?

MR. HILL: Yes, sir.

THE COURT: I'm not saying she will, I'm saying she has power to to do that.

MR. HILL: I understand.

. . .

THE COURT: **Has anything been promised to you, or said to you, or offered to you other than what is in this agreement that I have been reviewing with you?**

MR. HILL: **No, sir.**

(Id. at 29 - 31). *(emphasis added).*

Petitioner entered his plea in open court after each and every paragraph of the plea agreement, including the stipulation paragraph, was read aloud or summarized in open court.  He then testified that:  he and his counsel had reviewed the agreement before he signed it;  he

16

understood that his minimum sentence could be not less than five nor more than forty years; that the sentence he received might be different than that estimated by his counsel; and that no one could predict the length of his sentence until the sentencing hearing. He was specifically asked by the Court whether he understood that the total drug relevant conduct could lengthen his sentence and he answered in the affirmative. This exchange was had regarding his satisfaction with counsel's representation:

> THE COURT: During those occasions that you and Mr. Furbee either talked on the phone or in person, did you ask him questions about your case?

> MR. HILL: Yes, sir.

> THE COURT: And was he able to answer the questions that you asked him?

> MR. HILL: Yes, sir.

> THE COURT: Was there anything that you asked him that he didn't - - wasn't able to answer?

> MR. HILL: No, sir.

> THE COURT: Were you able to discuss the evidence that the Government had to prove its case against you? [sic]

> MR. HILL: Yes, sir.

> THE COURT: Were you able to review that evidence, when I say discuss it and review it, were you able to actually view it?

> MR. HILL: Yes, sir.

> THE COURT: Was it in a CD disk format, like on a screen?

> MR. HILL: Yes, sir.

> THE COURT: Is there anything that you asked Mr. Furbee to do for you which you think he improperly refused to do for you?

> MR. HILL: No, sir.

THE COURT: Now, were you able to discuss with Mr. Furbee any possible defenses that you or he thought you might have to the charges that have been made against you in the Indictment?

MR. HILL: Yes, sir.

THE COURT: Are you completely satisfied with the legal assistance, the counseling, the advice, the actions of Mr. Furbee?

MR. HILL: Yes, sir.

THE COURT: Did you and he have any disputes, arguments?

MR. HILL: No, sir.

THE COURT: Did you ever get the feeling like Mr. Furbee wasn't doing for you like he should be doing?

MR. HILL: No, sir.

THE COURT: This is your opportunity to tell me if Mr. Furbee didn't do for you what you think he should have done as a lawyer. And the reason I say it's your time, is because I don't want you to go to jail and you are facing a mandatory minimum of five years of imprisonment, and sit there with a lot of time on your hands and listen to a lot of other people and all of a sudden become unhappy with the treatment Mr. Furbee has afforded you by his representation. If you know of something, if he did something wrong, if he didn't do what you wanted him to do, now is the time to tell me.

MR. HILL: Everything is alright.

THE COURT: And because you are in this room pleading - - proposing to plead guilty to this charge, you don't feel constrained? In other words, you don't feel like you shouldn't tell me anything that went on that was bad between you and Mr. Furbee, do you?

MR. HILL: No, sir.

(Dkt.# 177 at 19 - 21).

Petitioner's claim that counsel was ineffective at the sentencing hearing for failing to put him

on as a witness to dispute the amount of his total drug relevant conduct has no merit. That an

experience defense attorney would assure him that after he had already stipulated and agreed to a

drug amount in his plea agreement in order to gain its benefits, he could then testify and dispute that very same stipulation at his sentencing hearing, defies logic.

Not only are the facts petitioner alleges not supported by the record, but petitioner's own sworn testimony at his plea hearing contradicts his claim that there was any agreement other than that that already summarized in the plea agreement. Petitioner signed each and every page of the plea agreement on March 5, 2007, including the page on which paragraph 9 containing the stipulation of total drug relevant conduct was contained. He was not sentenced until December 3, 2007, eight more months later.[4] Even then, petitioner made no objection to the PSR regarding his total drug relevant conduct. During the sentencing hearing, this exchange was had:

> THE COURT: All right. Mr. Hill, you stand convicted of violating 21 U.S.C, Section 841(a)(1) and 841(b)(1)(B). Now you remember the (b)(1)(B) is the trigger for a five year mandatory minimum, correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. This is possession with intent to distribute crack. Your base offense level is a 34. It was formerly a 36. This is a lot of crack cocaine involved in your case, seven hundred and four point eight seven grams of base.

(Dkt.# 179 at 31).

Petitioner made no protest and offered no objection when the Court referenced the amount of drugs at issue. Further, even when given the opportunity to allocute later during the sentencing hearing, petitioner merely made his apologies to the Court and to those affected by his drug use; he did not attempt to dispute the amount of drug relevant conduct.

---

[4] The reason for the eight month wait for sentencing was, as the Court said "Now I differed [sic] this hearing for a long time but it was for a purpose that I think you approve of, which was to give you the benefit of the change in the guideline amendments, which causes you to receive a two level reduction from the otherwise applicable guideline level. Okay?" (Dkt.# 179 at 17). Petitioner's base offense level under the new guideline was 34; it would have been 36 under the old guidelines (Id. at 49). The Court found that his sentencing range under the new guideline was 121 - 151 months imprisonment; had petitioner been sentenced under the old guideline, it would have been 151 - 188 months. (Id. at 32).

"Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

At the plea hearing, the petitioner stated that there were no agreements, verbal or otherwise, outside of the written plea agreement. It was not until after petitioner had been sentenced, and decided he was unhappy with his sentence, that he asserted that counsel was ineffective for not later challenging the total drug relevant conduct. The petitioner has not offered "clear and convincing evidence" which would call into question his statements made under oath during the plea colloquy. Nor has the petitioner provided sufficient evidence that any outside agreements existed. See Sutton v. United States, supra (petitioner must establish grounds by a preponderance of the evidence).

Furthermore, at the time of sentencing, petitioner had already stipulated and agreed to the total drug relevant conduct eight months earlier. At sentencing, counsel had no basis for objecting to a stipulation that petitioner had already agreed to; thus cannot be found ineffective for failing to do so. Petitioner's one hundred and twenty-one month sentence is a result of his own criminal actions, not because of anything that counsel did or failed to do.

Finally, regarding any further potential claim that petitioner might have regarding counsel's ineffective performance at the sentencing hearing, a cursory review of the record reveals that counsel did in fact zealously attempt to obtain the best possible sentence for him. Counsel filed a sentencing

memorandum on petitioner's behalf, raising a number of relevant considerations and filed two objections to the PSR that he argued at the sentencing hearing, one of which went to the possibility that petitioner might have been assessed an unwarranted criminal history point based on an uncounseled juvenile adjudication. Further, counsel sought a downward departure from the guidelines for petitioner, based on his age and level of maturity. Simply because one objection was mooted and the other overruled does not render counsel ineffective. It merely means that the record showed that petitioner's criminal history was serious enough to warrant the Court's declining it. It is simply not enough for a petitioner to allege that counsel may have been deficient in his representation at the sentencing hearing. In order to obtain an evidentiary hearing on an ineffective assistance claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir.) ("bald assertions and conclusory allegations do not provide sufficient ground. . . to require an evidentiary hearing;" contrary rule would "encourage meritless petitions burdening judicial resources"), cert. denied, 116 L. Ed. 2d 232, 112 S.Ct. 280 (1991); see also United States ex rel. Simmons v. Gramley, 915 F.2d 1128, 1138-39 (7th Cir. 1990); Lavernia v. Lynaugh, 845 F.2d 493, 501 (5th Cir. 1988); Spillers v. Lockhart, 802 F.2d 1007, 1009 (8th Cir. 1986). Here, petitioner has come forward only with the barest of allegations, all of which are unsupported. He has not produced any evidence that counsel was deficient in his representation after the plea was entered and up through the sentencing hearing.

Petitioner has the burden of demonstrating counsel's deficient performance and showing how it prejudiced him. Because petitioner cannot establish the underlying claim, petitioner cannot establish that counsel was deficient or that petitioner was prejudiced by counsel's failure to

challenge the issue. Relief should be denied.

## IV. <u>Recommendation</u>

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **GRANTING** the Government's Motion to Dismiss, **DENYING** the petitioner's § 2255 motion (Dkt.# 209) as well as his amended § 2255 motion (Dkt.# 226) and **DISMISSING this case with prejudice**.

Further, petitioner's requests that his conviction be overturned and that he be permitted to enter an open plea and/or receive a cooperation agreement with the Government, should be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: November 4, 2010

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE
